case, Thesone v. Empire Marketing Strategies, number 19-1026. Council, whenever you're ready, but take your time to unpack. Good afternoon. If it pleases the court, my name is Joe Whitcomb, and I represent Ms. Thesone, the appellant plaintiff in this case against Empire Marketing. This case actually turns on a fairly simple issue in our view of the world, which is whether or not an expert's testimony is absolutely imperative in establishing a prima facie case in an ADA case. Not believing... That's exactly the question I wanted you to address, but could I just ask you to clarify what you just said? Did the district court hold that expert medical evidence is required to prove disability in all ADA discrimination cases, or just that it was required under the circumstances of this case? Your Honor, the lower court ruled that in this case, that this case was analogous to the Falcon. I'm just going to say that incorrectly because I'm nervous, but analogize this case to the, yes, Falcon's case, in which this court ruled that the evidence in that case was insufficient to establish a prima facie case. It made the comparison, the lower court, let me avoid using pronouns, the lower court in this case used that case to say that the letter that Ms. Thesone submitted on February 20th, 7 days before, or February 21st, 7 days before her firing, was insufficient to establish a prima facie case. And also, and maybe more obscurely, that the 32 pages of medical evidence that the defense submitted in support of its summary judgment motion was insufficient to establish a prima facie case of disability. Just to be clear, you understand the district court to have made a decision about whether expert evidence was required as applied to this case only, not all cases, but just this case? It did so, Your Honor, without making the distinctions that Felton made. So in other words, it didn't offer an analysis as to why expert testimony was required in this case and why the distinctions between this case and Felton's are important is because the court made a specific ruling as to why expert testimony was required in that case, having to do with the obscurity of the diagnosis, which was a rare blood disorder, the absolute absence of that diagnosis anywhere in the record, and the absence, and I think importantly as it relates to this case, a document submitted by the plaintiff to her employer, or his employer in that case, returning him to work, returning Mr. Felton to work. None of those facts are present in this case, in the case at par. In fact, contrarily, as I just alluded to a moment ago, there were 32 pages of medical evidence. There was a diagnosis in the letter, which distinguishes it from Felton's, was a diagnosis of a back impairment, and I think most importantly, as compared to Felton's, this case involved a garden variety back impairment, which the court in Felton's and in Mancini, I think I'm saying that right, out in the second jurisdiction ruled that in most cases, where a lay jury could, of its own volition, determine that an impairment existed. Okay, now we're getting to something else. I understand about the doctor's letter and the notes and all that, but you did not timely designate an expert, and so we're back to this question of whether you needed someone who would come in or would be available to testify as an expert as to the alleged disability, and my question to you is why wouldn't you need to have expert evidence, maybe not so much to show back pain generally, but whether the back injury or the back pain was a sufficient impairment and a sufficient interference with a major life activity. Why don't you need an expert to make your prima facie case? I'm begging your pardon, Your Honor. There are three parts, as the court is I'm sure aware, of the Americans with Disability Act as amended, and Your Honor is now speaking to the definition of a disability, which has three prongs. The first definition being, of course, that it meaningfully, and I'm paraphrasing here, but meaningfully impairs a major life function. The third prong of that definition has to do with whether or not the plaintiff was regarded as disabled. Could we just stick with the first prong for now? So the answer to the question, Your Honor, is that... As to the first prong, do you need expert evidence to prove the first prong as a prima facie case? I submit to the court that the answer to that question is no, and I submit to the court that Falcons answered the question as well. Well, no, I understand you want to compare this case to Falcons, but why doesn't a jury need expert evidence as to your client and what you're alleging? And that's why, begging again, the court's forgiveness, that's why Falcons is important, because the reason that Falcons offered that expert testimony was required in that case is because it was an obscure blood disorder that most lay jurors would not understand. Juxtapose to this case where you have a garden variety back impairment that most lay jurors would understand, would understand the diagnosis, would understand by extension why that diagnosis would limit... What diagnosis? Was there medical testimony about a diagnosis? Your Honor, there was not a medical testimony as to a diagnosis, but there was medical evidence that would have been admissible at court about the back impairment and the diagnosis. What is that? That was the 32 pages of medical evidence on top of the letter. Again, the ways in which that is distinguishable from Falcons is that the letter in Falcons lacked any diagnosis. It didn't even state the blood disorder in the Falcons case. In this case, the NAMASTE letter points to or states unequivocally that she has a back impairment. And it may just be pronunciation. Dr. Brian Mongeris, that's who you're talking about? Of the NAMASTE practice, yes. No affidavit, just a letter, nothing in admissible form. Why is that good enough? Because it's accompanied by contemporary records of 32 pages that also speak to her back impairment, which get in under the normal medical records exception. Assuming, as we supplied in our reply briefs, that we would supply just a records custodian that would demonstrate, that would testify at hearing, or trial rather, that those records were prepared in the normal course of business and not in preparation for trial. Well, what was the diagnosis then? It was a back impairment. And beyond that, okay, it was a back impairment, a back injury, from a 2006 car accident that Ms. Tassone made her employer aware of at hiring. And that's uncontested. In fact, what was sort of baffling about this entire case, Your Honor, is that Empire's defense throughout most of this case was that it had in fact accommodated her impairments. They testified that a number of different times, and the transcript is submitted as part of this appendix, that at no time did they fail to accommodate her. So they didn't deny accommodating or deny that she had a diagnosis. Is that as precise as you can be, that the diagnosis was a back injury? What was the medical problem that would have caused the pain? She had suffered a back, she had suffered a car, she had been in a collision in 2006 that had injured her lower back. And the diagnosis is in the letter that I'm trying to find this. Let me find it in the transcript. Well, I don't want to chew up your time. If you refer to the letter and tell us there's a medical diagnosis in that letter, then it's in the record and we can see that. There is a medical diagnosis in the record. There's also a medical diagnosis in the contemporary records that accompanied that letter that were submitted, again, as part of the defense's motion for summary judgment, which again cite to, and I don't want to misquote the record, but cite to lower back injury and pain. But didn't the district court excluded consideration of the letter because that's all it was, was the letter. It didn't have a supporting affidavit, according to the district court. And I'm hearing you say that it still should have been considered. So I think you're arguing that the district court erred in not considering the letter. Is that correct? Yes, Your Honor. That is what we argue. Okay. And if you, I mean, this is a question of what's appropriate and what isn't appropriate to oppose and support summary judgment. What authority do you have that the court should have considered the letter? Well, one, the front of the court raised the argument in amicus brief that the, okay, here it is. The front of the court raised, the EEOC front of the court raised in amicus brief that the evidence submitted to oppose a summary judgment motion need not be in the form of admissible evidence at the time of its submission that it is sufficient that, for example, an affidavit could have been supplied prior to trial. I don't think you made that argument in your opening brief, though. I think you didn't address it until the reply brief. I think in your opening brief you challenged whether expert testimony was required, but you didn't challenge the district court's determination that what you offered, which was this doctor's letter, was inadmissible, as hearsay, at the summary judgment level until the reply brief when it was brought up in the response. And the reason our focus in our opening brief and our response to summary judgment and the reason we've argued over and over again about dangerously, in our view of the world, applying the standard where an expert must be required in something that is within the purview of a lay jury to understand, that seems to be the trend that we're arguing against. And I think that's the trend that the 2008 amendment was giving pushback on, this idea of this trajectory of the courts toward making it more and not less difficult for plaintiffs in ADA cases to get their cases in front of a jury. Well, I think there's your argument that you don't have to present an expert witness. Let's assume we agree with you on that. But you've still got to show that summary judgment shouldn't have been granted. And the question is, why shouldn't it have been granted? And you're pointing to this letter, and we have the letter without affidavit support, and you're raising it in your reply brief. So why should we be looking at that at this point, given how the letter and the notes have been presented? Well, one, we raised it to the lower court in our response to the motion for summary judgment. We raised not only the letter, and I want to emphasize that, again, not just the letter. And, again, that's a way in which it was distinguishable. Well, what else besides the letter then? Because assuming the district court's position, which was that this was hearsay and it's admissible, then you don't have, even if expert testimony isn't required, what can you point us to besides this letter that the court found admissible that establishes the disability? Did your client herself testify? I couldn't find anything where she actually, in sworn testimony, which would have been admissible, testified as to the nature of her disability. Well, one, she did testify in sworn testimony as it relates to her disability. I didn't see that. I didn't see that you attached it or you referred to it. You refer to these records, like these 30 pages of records, but there's no sworn testimony in there that would have made it admissible at summary judgment stage. Was there testimony from her at some stage or an affidavit, something sworn, that would have established her disability somehow? So, not only was there a testimony about her disability, there was a fight in the deposition that was taken up with the magistrate about a question specifically as to whether or not, she was asked specifically by defense counsel as to whether or not she had a disability under the Americans with Disabilities Act. I objected to that question as calling for a legal conclusion. We had that question brought up before, whether she was, sorry, I misspoke, whether she was disabled under the Americans with Disabilities Act. I objected as it being a calling for a legal conclusion, and we brought that up with Judge Haggerty. Was there testimony from her about how this impacted her ability to perform any major life activities, like lifting? Yes. She testified, and by the way, so did Empire, testified that she was unable to lift more than 15 pounds and that they had accommodated her and that they instructed her all that she needed to do was ask for assistance, and she would get assistance in lifting the 15 pounds. Could I just ask, as a follow-up to that, assuming she did talk about that, but if that's all that there is, under the case law on what constitutes a proper prima facie case for ADA discrimination, can the testimony of the plaintiff alone be enough to establish a prima facie case? Your Honor, I am unsure whether the plaintiff's testimony alone would be sufficient to establish a prima facie case of disability, but in this case we don't have just the plaintiff's testimony alone. We have the plaintiff's testimony plus more, and again, what the court . . . But if we disagree on that, with you on that, and we're left with the plaintiff, what's your fallback? Do you have a fallback position? Again, the court in Finley didn't rule that the plaintiff's testimony was inadmissible as it related to the prima facie case. It ruled instead that it was admissible as it related to the severity of her impairments, the limitations of her impairments, and what she needed. What the court ruled in that case was that because, again, of the obscurity of that particular type of impairment, a blood impairment, that a diagnosis was necessary that a lay jury would not be able to determine, didn't have the background sufficient to determine that that blood disorder existed. That is different from the knee injury in Mancini or the missing arm or leg that Mancini raises or, in this case, the back injury, which is, again, not a sophisticated or nuanced injury and a lay jury could determine that the evidence presented at trial was sufficient to establish the impairment. Thank you, counsel. May it please the court, counsel, John R. Mann of Gordon Rees here on behalf of the defendant, Empire Marketing Strategies. I'm not going to address the issues about whether there was good cause to amend the scheduling order to extend any of the deadlines because I think due to the highly deferential abuse of discretion standard, those rulings can be affirmed just on the untimeliness shown. I would like you to address the refusal to permit expert witness deadline to be extended. Permit which? The expert witness deadline. I thought he was challenging or she was challenging that. And I guess let's assume that we agree that the district court erred and that expert testimony wasn't required. Then that's a moot issue, isn't it? I don't know because I guess, yeah, maybe. Maybe it is if there's nothing. But my point is there doesn't seem to be anything in the record outside of that expert testimony from her either that we can look to. Well, no, there isn't because And perhaps there would have been had, I don't know, I'm speculating. Here's a couple of things. There was no, the record shows that the people that worked for Empire had no idea that she was disabled or claimed to be disabled until the fall of 2016 when she didn't finish a job and she claimed that she had a disability that prevented her from finishing the job. So they told her, okay, get us a doctor. Counsel, I thought there was evidence when she started working that she told them about her. That's in the complaint, but there's no other evidence of that. I don't believe. She never asked for an accommodation for her disability. That's clear. Because when she finally said, okay, I'm disabled, they gave her a form for a request for accommodation that was never filled out. So the 15-pound limit wasn't communicated at the beginning? And it was in the fall of 2016 when she said, I'm disabled, that's why I couldn't do this job. They asked her for a doctor's note, which she did not furnish until, I think, February 20th of 2017. But in the intervening time, she had been written up, and there's documentation in her personnel file for various failures to follow job instructions. In fact, a week before she furnished that doctor's note, my client got a complaint from one of the stores she was working at that she just up and walked off the job, giving an excuse that, well, one of her co-employees had been injured in a car accident, which was not true. I think we're straying from the issues here. Okay. I guess to get back to the expert witness, my understanding of what she's trying to argue now is that this doctor's note, which the district court said was hearsay, this letter or note from Mr. Monjares, the Namaste group, that that was essentially expert testimony. Now, if she were permitted now, even with the finding that expert testimony wasn't required, to go ahead and amend and add an expert to then turn this into an affidavit or some sort of sworn testimony, wouldn't she have enough? Do you see what I'm saying? No. If she were allowed to name the expert, whether it's required or not, the fact is she has this. It's just not admissible in the present form, and perhaps she could put it in a form on remand that would be admissible. Okay. The expert disclosure deadline in this case was February 5th of 2018. Now, the plaintiff had obtained this note from her doctor almost a full year before her alleged doctor. I want to say that because there's nothing in the record from any treating physician. She claimed she'd been injured in a 2006 auto accident. There's no medical records in the record from that, nothing from any physician who treated her from that. Okay. But let's go, let's talk about in March 2017, she obtained this note from Dr. Monjares, the concierge physician who, from the records, appears to focus his practice on giving people B vitamin shots. By a year later, the expert disclosure deadline, he was not disclosed, not even as a non-retained expert witness, the way most people disclose treating physicians as a non-retained expert witness. No disclosure at that time, and, in fact, in their motion for extension to amend the scheduling order to disclose an expert witness, on page 346 of the appendix, the plaintiff says that plaintiff's counsel has provided and referenced a letter of accommodation from an expert, referred to the physician throughout the summary judgment readings and provided copies of the plaintiff's medical reports. Then he says, plaintiff's counsel is aware that these disclosures do not satisfy the requirements under FRCP 26. So that's a recognition that even though they were claiming that this San Diego physician was an expert, they had never disclosed him as an expert for nearly nine months. The nine months between the expert disclosure deadline and the time in their motion for extension, or motion to amend the scheduling order's deadline for disclosing an expert witness was filed. There was no attempt to disclose him as an expert at any time, either before the deadline or after the deadline, and there's never been any explanation why. I mean... My understanding was, at least for some period of time, the plaintiff was under the impression that she didn't need an expert, and then the judge said, well, yes, you do. Well... And that was apparently accepted, whether it was right or wrong. It's undisputed. And so at least for some period of time, perhaps there's no expert because she doesn't think she needs one? It's undisputed that in March of 2018, defense counsel informed plaintiff's counsel that they think an expert was needed. And, in fact, they didn't seek to move to extend the expert deadline until after the deadline. And they did this in their motion to extend the deadline for amending complaint. The magistrate told them, you're going to lose this case because you don't have an expert. Other than the defense counsel advising, did the court make a ruling other than what was made in the summary judgment about whether an expert was required or not? No, because it wasn't raised. There was no way to raise it before that time. That's what I'm trying to find out. But I would think that anybody reading Falcons v. Lakewood and the other cases decided before and after that from the circuit would know that you need an expert, especially in the case of a non-obvious disability. We're not talking about someone missing an arm or a leg or somebody who's blind or anything or deaf. Well, Falcons didn't talk about what was obvious. I mean, it said in that case it wasn't obvious, and that was pretty clear. But it didn't say that in a case involving a back injury where a person has a lifting limitation that that would be obvious or not obvious. We don't really know. It certainly wasn't obvious to my client, or they wouldn't have asked for a doctor's note. But let me point out that at no time in the court below did they raise the issue that they don't need an expert. This is something that is raised for the first time on appeal. And it's not just a case of failing to raise an issue. It's a case of taking the exactly opposite position that you took in the I just pointed out in the motion to amend the scheduling order to extend the expert deadline, which is at page 345 of the appendix, plaintiff's counsel says the plaintiff's present claim under the ADA requires a finding that she is legally disabled as defined by statute. Quote, this element must be supported by expert testimony pursuant to federal rules of evidence 702, 703, 704. Let me ask you this question, so I'm sure I understand your position. What medical evidence would have sufficed that you would have said we can't get summary judgment now? An affidavit from her treating physician. Saying what? Pardon? Saying what? An affidavit from her treating physician. That says what? That says that the plaintiff has a disability due to and describe the mechanism, the physiological mechanism of the disability. As a result of this, and you see this in workers' comp cases, you have the AMA guide to impairment ratings. As a result of this disability, the plaintiff is impaired in the following areas. Then I think that physician, and it might not be a treating physician, you might have to go for an outside expert for this, and say that in my opinion, to a reasonable degree of medical probability, the plaintiff has certain lifting restrictions as a result of this disability that limits her range of motion in the following ways. That's not a high bar. You see that in every personal injury case. You have a treating physician who describes the injury. In every work comp case, you have a treating physician who describes the injury. In ADA cases, you have a treating physician, usually a treating physician because that's who knows the most about the, so it's not a retained expert. It's not a hired gun to say, in my opinion, to a reasonable degree of medical probability, this person has this recognized impairment, that's a statutory term, that limits the following activities. And how does that track with the knee injury case that's been referenced here today? The pardon? The knee injury case. I don't have the name off the top of my head, but was all of that required in that case? You know, I think there, and I'm not, that case was not from this circuit, as I understand. So it's from another circuit, and it may be from another circuit that says, well, you don't need an expert in every case. And I'm not saying you need an expert in every case. It's an obvious disability, again, the missing arm, the missing leg. Well, a knee injury compared to a back injury. If the knee injury doesn't need one, why does this back injury? That's my question. Because it's not obvious to laypersons on the jury how this supposed back injury would cause a limitation. A civilian, a layperson can't say, I have a lifting restriction. Because a lifting restriction is only imposed by a physician. And so in order to understand why there's a lifting restriction, you need expert testimony under Rule 702. Because that, I have a lifting restriction, is beyond the scope of lay opinion under Rule 701. Could I just, I'm still trying to understand the scope of the district court's and magistrate judge's decision. And that decision says, as I will discuss below, the Tenth Circuit requires the testimony of an expert to establish a prima facie case of a disability under the ADA. That sounds like a pretty general holding, and not one that is simply applied to this particular case. You know, I do think it's a post, I mean, it's an ad hoc determination. I think that . . . Well, no, you've already made, I think you just said a minute ago, that an expert isn't required in all cases. Right. It's an ad hoc determination. Well, I understand that. But that doesn't sound like what the district court said. Well . . . Now, if the district court said that, then it seems to me you're almost saying the district court was in error. No. Wait, let me finish. You said that an expert is not required in every case. This seems to say that an expert is required in every case. Well, then in that case, maybe the district court was speaking a bit too broadly, but he clearly thought that an expert was required in this case. And whether he overstated the rule, I don't think, is important. Counsel, he'd have to think that an expert is required if he thinks an expert is required in every case. But that doesn't change that an expert was required in this case, because this was not something that could be understood, could be proved through lay opinion, or could be understood without the skill or experience required from an expert. So it's your position that lower back pain that limits someone's ability to lift is beyond the can of the average juror? I don't think this case involves lower back pain. I think it's in the T section. Fine. The back pain. I think... Is it beyond the can of an average juror? Yes, it is. Why? It is because for someone to just say, I have lower back pain, and ask the jury, I mean, there is a gatekeeper function, an important gatekeeper function, but to say, I have lower back pain, I can't do this. Could we ask some questions and not have you go on like that? Okay. All right. The gatekeeper function in Dawbert and Rule 702 does not address when an expert is required. It addresses when an expert is permitted. Here we're dealing with the question of when an expert is required. And my question to you is, why is an expert required when someone says, I have a back injury and I cannot lift heavy weights? Now, that might not be enough to prove a case beyond preponderance of the evidence. Maybe it is. But why can't a jury understand that? It doesn't seem very complicated. Because I think that the jury needs to know what is the physiological reason why it restricts a major life activity. Did a jury need to know that in Mancini when it was a knee injury or in Marinelli when it was neck and arm pain? Again, I can't address the specific facts of those particular cases. Well, the courts there said an expert wasn't necessary. But I do want to point out that this issue was never preserved below and the EEOC regulation was never cited below. Counsel, the district court relied on this for its decision. Does that prevent the plaintiff from contesting it on appeal? If they don't raise it in the district court, it does. Even if the district court relied on it for its decision? Yes. Do you have authority for that? If you want to change the law, you raise the issue in the district court. No, you cite me a case for that proposition. But if the district court says, I'm granting summary judgment because you haven't presented an expert, he can't appeal that? He can appeal it if he raises it. You can say, Your Honor, district court, I think your interpretation of the appellate voice is wrong. Give me a case, counsel. I can come up with that. I don't have it off the top of my head, but I'll be glad to submit it to you. All right. Why don't you do that? All right. Your time is up. Thank you. Does he have any more time? No, Your Honor. All right. We've exhausted time for this case. Thank you for these arguments. The case will be submitted and counsel are excused.